UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
SANDRA LOCHREN, et al.,

                             Plaintiffs,                      **ORDER**
                                                                          CV 01-3925 (ARL)

        -against-

COUNTY OF SUFFOLK,

                             Defendant.
---------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

## I.  INTRODUCTION

The plaintiffs, six female police officers, commenced this pregnancy discrimination action in June 2001, under Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e, *et seq.,* and the New York Human Rights Law, N.Y. Executive Law § 290, *et seq.*  The plaintiffs challenged the April 2000 policy of the defendant County of Suffolk (the "County") that excluded from light duty status any police officer who suffers an off-duty injury, condition or illness.  Following a jury trial, the plaintiffs obtained damages and invalidated the policy.  Thereafter, the parties entered into a consent decree that altered the policy by allowing pregnant police officers to be given limited duty assignments.  The plaintiffs have now made an application for attorneys' fees and costs.  For the following reasons, the plaintiffs are awarded $578,704.14 for attorneys' fees and costs.

The parties are presumed to be familiar with the facts of this case, and thus, the underlying facts will only be recited when necessary to put the discussion in context.

## II.  DISCUSSION

### A.  Eligibility for Attorneys' Fees

"In the United States, parties are ordinarily required to bear their own attorney's fees – the prevailing party is not entitled to collect from the loser. . . . Congress, however, has authorized the award of attorney's fees to the 'prevailing party' in numerous statutes, . . . such as . . . the Civil Rights Act of 1964, . . . 42 U.S.C. §2000e-5(k)." *Buckhannon Bd. & Care Home, Inc., v. West Virginia Dept. Of Health & Human Res.,* 532 U.S. 598, 602 (2001). The Civil Rights Act provides:

> In any action or proceeding under [Title VII] the court, in its discretion, may allow the prevailing party . . . a reasonable attorneys' fee (including expert fees) as part of the costs.

42 U.S.C. § 2000e-5(k). Accordingly, the threshold issue before the court is whether the plaintiffs are prevailing parties.

Since "the same standards are 'generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party,'" the court is guided by cases addressing prevailing party status without regard to whether the cases involve civil rights plaintiffs. *See NAACP v. Town of East Haven,* 259 F.3d 113, 117, n.5 (2d Cir. 2001), *cert. denied,* 534 U.S. 1129 (2002)(citing *Hensley v. Eckerhart,* 461 U.S. 424 (1983). "'[T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of the claim' either through a 'judgment,' a 'consent decree' or a 'settlement.'" *Davis v. City of New Rochelle,* 156 F.R.D. 549, 554 (S.D.N.Y. 1994)(citing *Farrar v. Hobby*, 506 U.S. 103 (1992)). "Otherwise, the judgment or settlement cannot be said to 'affect the behavior of the defendant toward the plaintiff' so as to amount to a "material alteration of the legal relationship of the parties, and thereby transform the plaintiff into a prevailing party." *Farrar*, 506 U.S. at 112.

Applying these standards, the court concludes that the plaintiffs are prevailing parties. To

begin with, the plaintiffs secured a jury verdict in the amount of $56,087.36. [Doc. No. 152].

Each of the plaintiffs was awarded either actual damages and/or damages for emotional distress

in connection with the plaintiffs' pregnancy discrimination claim.[1]  Thereafter, in response to the

plaintiffs' motion for a permanent injunction, the parties entered into a consent decree

"provid[ing] all pregnant officers who request limited duty, upon presentation of a doctor's note,

limited duty positions for a period of at least six months during their pregnancies" and

prohibiting the County from "revert[ing] back to the April 2000 limited duty policy." [Doc. No.

164].

After the Supreme Court rejected the catalyst theory, that is, the idea that a plaintiff was a

prevailing party if his lawsuit brought about a voluntary change in the defendant's conduct, the

Circuits were split on the type of judicial relief necessary to convey prevailing party status.  *See*

*Maine Sch. Admin. Dist. No. 35 v. Mr. & Mrs. R.,* 321 F.3d 9 (1st Cir. 2003)(interlocutory orders

conferring substantive relief sufficient to convey prevailing party status); *compare Christina A. v.*

*Bloomberg,* 315 F.3d 990 (8th Cir. 2003)(only enforceable judgment on the merits or consent

decree conveys prevailing party status).  Aligning itself with the First Circuit, this Circuit has

held that a broad range of outcomes convey the judicial imprimatur necessary to a fee award.

*See Preservation Coalition v. Fed. Transit Admin.*, 356 F.3d 444, 452 (2d Cir. 2004).  In so

holding, the Second Circuit has stated that the courts are to focus on the "materiality of the

judicial outcome," and convey prevailing party status when the court sanctions a substantive and

---

[1]The court finds no merit in the County's argument that the plaintiffs have not prevailed because the jury found that four of the six plaintiffs had not been intentionally discriminated against.  This argument ignores the fact that while the jury only found in favor of the plaintiffs Sarah A. MacDermott and Kelly Mennella on the theory of disparate treatment, the jury found for the remaining plaintiffs on the theory of disparate impact. [Doc. No. 139].

material alteration in the legal relationship of the parties. *Id.* at 451- 52. There is no question

that such a material alteration has occurred here, and thus, the plaintiffs are prevailing parties

whose reasonable attorneys' fees and costs are compensable.

### B. Determining an Appropriate Fee

For many years attorneys' fee awards in this district have been determined by calculating

the "lodestar" figure, which was based on the number of hours expended, multiplied by a

reasonable hourly rate. *See Cruz v. Local Union No. 3 of the IBEW,* 34 F.3d 1148, 1159 (2d Cir.

1994) (citing *F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1263 (2d Cir.

1987)). The party seeking reimbursement of these fees bears the burden of proving the

reasonableness and the necessity of hours spent and rates charged. *See generally, N.Y. State*

*Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983). Recently, the Second

Circuit has attempted to clarify the fee-calculation rules and it is with these clarified rules in

mind that the court will determine the appropriateness of the fee to be awarded. *See Arbor Hill*

*Concerned Citizens v. County of Albany,* 2008 WL 961313 (2d Cir. April 10, 2008), amending

493 F.3d 110, 117 (2d Cir. 2007), amending 484 F.3d 162 (2d Cir. 2007).

### 1. Contemporaneous Time Records.

A fee application must still be supported by contemporaneous time records that describe

with specificity, by attorney, the nature of the work done, the hours expended, and the dates.

*Cruz,* 34 F.3d at 1160-61. The court has reviewed the records submitted by the attorneys and

support staff who have represented the plaintiffs over the course of the last six years. The level

of detail set forth in the records is sufficient to meet the requisite standard. In addition, counsel

for the plaintiffs have provided computer printouts reflecting the billable time incurred in

connection with this matter. *See id.*; *see also Mautner v. Hirsch,* 831 F. Supp. 1058, 1076-77

(S.D.N.Y. 1993), *rev'd on other grounds,* 32 F.3d 37 (2d Cir. 1994)(fee applicant can rely on

monthly computer printouts based on contemporaneous entries to satisfy the time record

requirement). Thus, the court finds that the records submitted meet the standard for

contemporaneous time records.

    **2. Reasonableness of Hourly Rate.** The court next addresses the proposed hourly rates

for the attorneys and support staff who have worked on this matter. As previously stated, courts

in this Circuit have historically used a "lodestar figure" to calculate attorneys' fee awards. The

"lodestar figure" was generally held to be the prevailing hourly rate for "similar services of

lawyers of reasonably comparable skill, experience, and reputation'" in "'the district in which the

court [sat],' unless there [was] a showing that 'special expertise of counsel from a . . . [different]

district was required.'" *Cruz,* 34 F.3d at 1159 (citing *Polk v. New York State Dep't of*

*Correctional Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)). In its *Arbor Hill* decision, the Second

Circuit shed light on its position regarding the proper application of lodestar in this Circuit.

    To begin with, the Second Circuit declared that it was abandoning the term "lodestar,"

replacing it with the term "presumptively reasonable fee."[2] *Arbor Hill Concerned Citizens v.*

*County of Albany,* 493 F.3d 110, 117 (2d Cir. 2007), amending 484 F.3d 162 (2d Cir. 2007). In

so doing, the Second Circuit explained:

> While the district court should generally use the prevailing hourly rate in the
> district where it sits to calculate what has been called the 'lodestar'-what we think
> is more aptly termed the "presumptively reasonable fee"- the district court may

---

[2]The Second Circuit did, however, note that it does "not purport to require future panels
of the [Second Circuit] to abandon the term" because "it is too well entrenched." *Arbor Hill
Concerned Citizens,* 493 F.3d 118, n.2.

adjust this base hourly rate to account for a plaintiff's reasonable decision to retain out-of-district counsel, just as it may adjust the base hourly rate to account for other case-specific variables.

*Arbor Hill Concerned Citizens,* 493 F.3d 111-112. Notably, the Second Circuit held that in deciding whether to apply an out-of-district rate, the court should consider "what a reasonable, paying client would be willing to pay" for legal services rendered as well as the following factors:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether the attorney had an interest (independent of that of his client) in achieving the ends of the litigation or initiated the representation himself, whether the attorney was initially acting *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) the attorney expected from the representation.

*Id.*

The Second Circuit further stated that a district court "bears the burden of disciplining the market, stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." *Id.* Finally, the Second Circuit has just clarified that "[t]he reasonableness of a fee award does not depend on whether the attorney works at a private law firm or a public interest organization." *Arbor Hill Concerned Citizens v. County of Albany*, amended decision, April 10, 2008, 2008 WL 961313 *1, n.2. Attorneys from non-profit organizations are to be treated in the usual way when determining attorneys' fees. *Id.*

Guided by these principles, the court turns its attention to the reasonableness of the rates sought by the attorneys involved in this matter. During the course of this litigation, sixteen attorneys and thirteen paralegals from five different firms and/or agencies rendered legal services to the plaintiffs. Their proposed hourly rates are as follows:

|  | **Attorneys** | **Rates** |
|---|---|---|
| **Outten & Golden, L.L.P.** | Linda Neilan | $325 |
| | Carmelyn Malalis | $325 |
| | Kathleen Peratis | $450 |
| | Justin Swartz | $450 |
| | Tarik Ajami | $450 |
| | Mark Humowiecki | $325 |
| **New York Civil Liberties Union** | Elisabeth Benjamin | $425 |
| | Cassandra Stubbs | $350 |
| | Rebekah Diller | $375 |
| **American Civil Liberties Union** | Lenora Lapidus | $425 |
| | Namita Luthra | $375 |
| **Rosen, Leff** | David Fish | $250 |
| | Robert Rosen | $300 |
| | Gina Ianne | $150 |
| | Sima Ali | $200 |
| **Leon Friedman** | Leon Friedman | $400 |

Outten & Golden, L.L.P., the New York Civil Liberties Union, the American Civil Liberties Union, and Leon Friedman are all located in Manhattan and each charges rates consistent with the billing rates of attorneys located in the Southern District. *See Access 4 All, Inc. v. Park Lane Hotel, Inc.,* 2005 U.S. Dist. LEXIS 34159 * 11 (S.D.N.Y. Dec. 7, 2005)(approving rates ranging from $250 to $425 for partners and rates up to $390 for senior attorneys); *see also Martinez v. Port Auth. of New York & New Jersey,* 2005 U.S. Dist. LEXIS 19141 *76 (S.D.N.Y. Sept. 2, 2005)(applying rate of $400 for partner and $325 for co-counsel in civil rights case); *compare Marisol A. v. Guiliani,* 111 F. Supp. 2d 381, 387 (S.D.N.Y. 2000)(applying rates in civil rights case litigated between 1997 and 2000 of $350 for attorneys with more than fifteen years of experience, $300 for attorneys with ten to fifteen years of experience, $300 for attorneys with ten to fifteen years of experience, $230-$250 for attorneys

with seven to nine years of experience). The plaintiffs argue that they chose lawyers from

Manhattan with higher hourly rates because the attorneys "are at the highest level of their

profession." But their choice was not justified given the simplicity of the issues in the case, the

wealth of competent civil rights attorneys in this district, the length of time the attorneys were

given to prepare for the case, and the far more limited resources being marshaled by the

defendant, who was represented by the Suffolk County Attorneys' Office. Accordingly, the rates

charged by these attorneys "would simply have been too high for a thrifty, hypothetical client-at

least in comparison to the rates charged by local attorneys," and thus, the court will apply Eastern

District rates. *See Arbor Hill Concerned Citizens,* 493 F.3d at 112.

From 2001, when this lawsuit began, to 2006, when the trial took place, prevailing rates

in the Eastern District have ranged from $200-$375 for partners, $200-$250 for senior associates

and $100-$150 for junior associates. *See Matthews v. City of New York,* 2003 U.S. Dist. LEXIS

16334 at * 16 ( E.D.N.Y. Aug. 27, 2003)(citing *Fink v. City of New York,* 154 F. Supp. 2d 403,

407 (E.D.N.Y. 2001)); *Cioffi v. New York Cmt'y Bank,* 465 F. Supp. 2d 202, 218 (E.D.N.Y.

2006). The wide ranges reflect the fact that courts take stock of differing pedigrees of counsel

and variants in litigation. *See Hyeon Soon Cho v. Koam Medical Services, P.C.,* 524 F. Supp. 2d

202, 207 (E.D.N.Y. 2007). In this case, the plaintiffs have offered substantial information

concerning their lawyers' educational background, bar admissions and experience litigating civil

rights cases. While the levels of experience varied among the attorneys, the biographies make

clear that the attorneys were all well-trained professionals.

The plaintiffs have requested that their counsel be reimbursed at their current hourly rates

although this litigation spanned over five years. While current rates are sometimes applied in

order to compensate for the delay in payment, *see LeBlanc-Steinberg v. Fletcher,* 143 F.3d 748,

764 (2d Cir. 1988), the court cannot ignore the fact that many of the attorneys seeking

reimbursement as partners and senior associates were just beginning their legal career when this

lawsuit began.  In fact, three of the four attorneys who tried the case were junior associates at the

time of trial and had just graduated from law school when the case was commenced.  These

disparities were not taken into account in the plaintiffs' application.  Accordingly, to account for

the differing levels of experience, the court will compensate the plaintiffs' counsel at the middle

range of the current hourly rates awarded to attorneys in this district.[3]

The plaintiffs are, thus, entitled to be reimbursed at the following rates:

|                                   | **Attorneys**       | **Rates** |
| --------------------------------- | ------------------- | --------- |
| **Outten & Golden, L.L.P.**       | Linda Neilan        | $ 225     |
|                                   | Carmelyn Malalis    | $ 225     |
|                                   | Kathleen Peratis    | $ 300     |
|                                   | Justin Swartz       | $ 300     |
|                                   | Tarik Ajami         | $ 225     |
|                                   | Mark Humowiecki     | $ 225     |
| **New York Civil Liberties Union** | Elisabeth Benjamin | $ 300     |
|                                   | Cassandra Stubbs    | $ 225     |
|                                   | Rebekah Diller      | $ 225     |
| **American Civil Liberties Union** | Lenora Lapidus     | $ 300     |
|                                   | Namita Luthra       | $ 225     |
| **Rosen, Leff**                   | David Fish          | $ 225     |
|                                   | Robert Rosen        | $ 300     |

---

[3]In a few cases, the court was able to classify an attorney as a partner, a senior associate or a junior associate based on that attorney's years of experience at the time he or she was rendering legal services for the plaintiffs.  For example, Mr. Ajami, who worked on the matter in January and February of 2006 seeks a partner's rate although he was not made a partner until August 2006 after he was no longer involved in the suit.  Accordingly, he will be reimbursed as a senior associate.

|                    |                    |            |
|--------------------|--------------------|------------|
|                    | Gina Ianne         | $ 0[4]     |
|                    | Sima Ali           | $ 0        |
| **Leon Friedman**  | Leon Friedman      | $ 300      |

### 3. Reasonableness of Time Spent

In determining the reasonableness of the time spent, the court agrees with the County that a greater economy of time could have been used. While the plaintiffs may have benefitted from having one or more attorneys who are experts in civil rights litigation, they certainly did not require sixteen attorneys to try this case. At almost all times, three firms/agencies actively participated in the litigation and the court does not believe that each of the sixteen attorneys could have played such a "unique role in bringing this litigation to a successful conclusion" that no efforts were duplicated. For example, the plaintiffs often had two or three attorneys attending depositions and it is clear that documents were reviewed and/or edited by members of several different firms. In fact, given the number of plaintiffs, witnesses, and documents, the court questions why the plaintiffs required four attorneys to try a week long civil rights case or a separate law firm to prepare a simple attorneys' fee application.

Accordingly, the court finds the plaintiffs did not justify the need to retain sixteen attorneys and thirteen support staff from five different firms/agencies to represent six plaintiffs with essentially the same claims. To reflect this, the court will exercise its discretion and reduce the number of overall hours by 25%. *See N.Y. State Ass'n of Retarded Children,* 711 F.2d at 1146 (noting that courts have "endorsed percentage cuts as a practical means of trimming fat from a fee application"); *Lavely v. Redheads, Inc.,* 2007 U.S. Dist LEXIS 77109 *26 (S.D.N.Y.

---

[4]The court will not award attorneys' fees to Gina Ianne or Sima Ali as no information has been provided concerning their credentials.

Oct. 12, 2007)(25% reduction used to address overstaffing issues); *Envirosource, Inc. v. Horsehead Resource Dev. Co.,* 981 F. Supp. 876, 884 (S.D.N.Y. 1998) (reducing total number of hours by 25%); *see also Lunday v. City of Albany,* 42 F.3d 131, 134 (2d Cir. 1994) (district court not required to "set forth item-by-item findings concerning what may be countless objections to individual billing items") (*per curiam*).

The court will not, however, deduct from the award amounts incurred for legal service rendered prior to the filing of the complaint or for unsuccessful motions, as urged by the County. The court agrees with the plaintiffs that the attorneys' pre-litigation investigation and work done in relation to the administrative hearings contributed to the ultimate success of the lawsuit and thus, is compensable. *See Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)(relevant query not "whether hindsight vindicates an attorneys' time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.").

As such, the attorneys will be awarded the following for legal services rendered:

| Attorneys | Rates | Hours Expended | Amount |
|-----------|-------|----------------|--------|
| Linda Neilan | $ 225 | 461.6 | $ 103,860.00 |
| Carmelyn Malalis | $ 225 | 482.9 | $ 108,652.50 |
| Kathleen Peratis | $ 300 | 54.5 | $ 16,350.00 |
| Justin Swartz | $ 300 | 20.1 | $ 6,030.00 |
| Tarik Ajami | $ 225 | 8.4 | $ 1,890.00 |
| Mark Humowiecki | $ 225 | 6.9 | $ 1,552.50 |
| | | | |
| Elisabeth Benjamin | $ 300 | 48.66 | $ 14,598.00 |
| Cassandra Stubbs | $ 225 | 403.75 | $ 90,843.75 |
| Rebekah Diller | $ 225 | 198.73[5] | $ 44,714.25 |

---

[5]The court has deducted the 7.83 hours of time that Ms. Diller spent on the Macholz-Barr matter but has included the time spent on the Mortenson matter based on Ms. Diller's representation that the file was reviewed "to glean information relevant to the crafting [of] discovery requests" in this matter.

| | | | |
|---|---|---|---|
| Lenora Lapidus | $ 300 | 165.50[6] | $   49,650.00 |
| Namita Luthra | $ 225 | 678.54 | $ 152,671.50 |
| David Fish | $ 225 | 263.57 | $   59,303.25 |
| Robert Rosen | $ 300 | 3.2 | $        960.00 |
| Leon Friedman | $ 300 | 41.90 | $   12,570.00 |

|  |  |
|---|---|
| Sub-total: | $ 663,645.75 |
| Less 25% reduction | 165,911.44 |
| Total: | 497,734.31 |

In addition, several of the attorneys are seeking reimbursement for their travel time at fifty percent of their hourly rate. "[C]ourts in the Second Circuit regularly reduce attorneys' fees by 50% for travel time." *See Green Party v. N.Y. State Bd. of Elections,* 2006 U.S. Dist LEXIS 30014 * 20 (E.D.N.Y  Feb. 7, 2006).   Accordingly, the attorneys seeking reimbursement for travel time will be awarded as follows:

| Attorneys | Rates | Hours Expended | Amount |
|---|---|---|---|
| Linda Neilan | $ 112.50 | 23.6 | $     2,655.00 |
| Carmelyn Malalis | $ 112.50 | 26.7 | $     3,003.75 |
| Elisabeth Benjamin | $ 150 | 7.0 | $     1,050.00 |
| Cassandra Stubbs | $ 112.50 | 27.67 | $     3,112.88 |
| Rebekah Diller | $ 112.50 | 73.75 | $     8,296.88. |
| Lenora Lapidus | $ 150 | 18.0 | $     2,700.00 |
| Namita Luthra | $ 112.50 | 36.0 | $     4,050.00 |

|  |  |
|---|---|
| Sub-total: | $ 24,868.51 |
| Less 25% reduction | 6,217.13 |
| Total: | $  18,651.38 |

Finally, the plaintiffs also seek to be reimbursed for the fees associated with twelve paralegals and technical staff.  The hourly rates approved for paralegals in this District have

---

[6]The court has reduced the number of hours sought by Ms. Lapidus by 89.63 hours based on her acknowledgment that the May 16, 2002 entry was mistakenly included.  *See* Decl. of Lapidus at ¶ 3.

ranged from $65 to $75. *See Staples, Inc. v. W.J.R. Associates,* 2007 U.S. Dist. LEXIS 65211

*17 (E.D.N.Y. Sept. 4, 2007)(citing *Garden City Boxing Club, Inc. v. Rojas*, 2006 U.S. Dist.

LEXIS 95615 (E.D.N.Y. Nov 21, 2006) (approving $75 per hour); *C.B. ex rel W.B. v. N.Y. City*

*Dep't of Educ.*, 2006 U.S. Dist LEXIS 68649 (E.D.N.Y. Sept. 25, 2006)(approving $75 per

hour); *Communication Express Nat'l, Inc. V. Rikhy*, 2006 U.S. Dist. LEXIS 8716 (E.D.N.Y. Feb.

16, 2006)(noting approval of rates ranging from $65 to $75 per hour)).  Therefore, in accordance

with recent case law, the court reduces the rates sought by the paralegals to $75 per hour and

awards an additional $7,822.13 for the 122.7 hours expended by paralegals and technical staff

less the fifteen percent overall reduction.

Thus, the court recommends an award of attorneys' fees in the amount of $ 516,385.69.

### 4.  Costs

The plaintiffs also seek costs in the amount of $67,428 for the relevant time period.[7]

Included in the general category of expenses are subpoena fees, travel expenses, meals and

hotels, photocopying and postage, legal research, "summation," fees for document retrieval and

process  servers, fees for court reporters, messengers and miscellaneous fees.  Specifically, the

firms/agencies seek to be reimbursed for the following items:[8]

| **Outten & Golden, L.L.P.** | Subpoenas | $ 734.20 |
| | Travel | $ 800.05 |
| | Meals | $ 451.94 |
| | Summation | $ 440.00 |
| | Legal Research | $ 9.12 |
| | Document Retrieval/Process Server | $ 1,797.75 |

---

[7]There may be a typographical error somewhere in the plaintiffs' papers, as the court was unable to reconcile the $67,428 amount with the supporting papers.  The court relied on the supporting affidavits for its figures rather that the amount stated in the memorandum.

[8]The plaintiffs did not provide any support for the $671 allegedly expended by Rosen, Leff.  Accordingly, that amount was not included in the chart.

|                                   |                           |             |
|-----------------------------------|---------------------------|-------------|
|                                   | Hotels                    | $ 4,817.23  |
|                                   | Court Reporters           | $ 2,442.50  |
|                                   | Messengers                | $    51.35  |
|                                   | Misc.                     | $   262.44  |
|                                   |                           |             |
| **New York Civil Liberties Union** | Deposition Transcripts   | $ 9,909.92  |
|                                   | Hotels                    | $ 2,211.12  |
|                                   | Train and Air Transport   | $   669.10  |
|                                   | Taxi and Car Services     | $   520.67  |
|                                   | Printing and Photocopying | $ 5,401.33  |
|                                   |                           |             |
| **American Civil Liberties Union** | Deposition Transcripts   | $13,471.00  |
|                                   | Experts                   | $12,511.20  |
|                                   | Hotels and Travel         | $ 4,306.77  |
|                                   | Printing/Photocopying     | $ 1,773.20  |

The County argues that the plaintiffs should not be compensated for costs to the extent that they have failed to provide an itemization for those expenses. The court finds that while only one firm provided the documentary support for the expenditures in the form of reconciliation reports, all of the plaintiffs' counsel provided the court with their firms' computerized itemization of the expenses, along with an affidavit verifying that the computer records accurately reflected that firms expenditures. As such, with the exception of the miscellaneous entry, the court finds the documentation submitted was adequate.

The County further argues that some of the costs are not reimbursable. To begin with, expenditures for printing and photocopying, transcripts, process servers, filing fees, subpoena fees, messenger services, and postage are routinely recoverable. *See Bobrow Palumbo Sales, Inc. v. Broan-Nutone,* 2008 U.S. Dist. LEXIS 35195 *26 (E.D.N.Y. April 30, 2008)(citing *Simmons v. N.Y. City Transit Auth.,*2008 U.S. Dist. LEXIS 16949 *22-23 (E.D.N.Y. Mar. 4 2008)). Similarly, the expenses related to travel, transportation and meals are now routinely recoverable as costs. *Id.* at *30 (citing *Simmons,* 2008 U.S. Dist. LEXIS at *22(costs relating to travel recoverable); *In re Merrill Lynch & Co. Research Reports Sec. Litig.,* 2007 U.S. Dist. LEXIS

9450 *79 (S.D.N.Y. Jan. 31, 2007)(costs related to transportation and meals recoverable).

Finally, while the undersigned previously held that legal research was "merely a substitute for an attorney's time that is compensable under an application for attorney's fees and is not a separately taxable cost," *see United States for Use and Benefit of Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp.,* 95 F.3d 153, 173 (2d Cir.1996), based on the Second Circuit's holding in the 2004 *Arbor Hill* decision, the court finds that the costs associated with electronic research are now compensable. *See Arbor Hill Concerned Citizens v. County of Albany,* 369 F.3d 91, 97-98 (2d Cir. 2004). Accordingly, the plaintiffs are entitled to reimbursement of the expenses set forth in the chart above less $262.44 amounting to $ 62,318.45.

In conclusion, the court recommends an award of attorneys' fees in the amount of $ 516,385.69 and costs in the amount of $ 62,318.45, for a total award of $578,704.14.

Dated: Central Islip, New York                   **SO ORDERED:**
      May 8, 2008


_____/s/_____
ARLENE ROSARIO LINDSAY
United States Magistrate Judge